UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN M. THOMAS, | ) | |
| | ) | Case No. 1:14CV2127 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE CHRISTOPHER BOYKO |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| CHAD ROGERS, | ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

## I.     INTRODUCTION

The plaintiff Shawn M. Thomas filed a prisoner civil rights complaint in this court under 42 U.S.C. § 1983.  (R. 1.)  The court dismissed the complaint sua sponte under 28 U.S.C. §§ 1915(e)(2) and 1915A.  (R. 4-5.)  Thomas appealed from the court's judgment, and the Sixth Circuit vacated the dismissal of one claim, while affirming the dismissal of the remaining claims. (R. 12-13.)  Following the Sixth Circuit's ruling, Thomas filed a motion to amend his complaint, indicating it would be limited to allegations against the remaining defendant, Rogers.  (R. 18.) With leave of court, Thomas filed an amended complaint against Rogers.  (R. 22.)  Defendant Rogers subsequently filed a motion to dismiss, which was granted in part, and denied in part.  (R. 33, 36.)  The Eighth Amendment claim against Rogers regarding Thomas's conditions of confinement remains, with several sub-claims having been dismissed.  (R. 33, PageID #: 386; R. 36.)

Currently before the court is the defendant's motion for summary judgment.  (R. 44.)

Thomas filed an opposition (R. 51), Rogers filed a reply (R. 56), and, with leave of court,

Thomas filed a sur-reply (R. 59).  This court recommends that Defendant's motion for summary

judgment be GRANTED, for the reasons set forth herein.


## II.        BACKGROUND

The Sixth Circuit summarized the allegations in Thomas's initial complaint that serve as

the background to his remaining conditions-of-confinement claim against Rogers, as follows:

> Thomas accused Corrections Corporation of America ("CCA") and more than a
> dozen of its employees of violating his rights under the First, Eighth, and
> Fourteenth Amendments.  His complaint outlined three separate incidents,[1]  The
> first – "Incident from September 30, 2012- October 7, 2012" – alleged that
> Thomas was assaulted by a group of his fellow prisoners at the Lake Erie
> Correctional Institution ("LECI").  He asserts that the assault was the result of
> CCA's unsafe policies and customs as well as deliberate indifference to the safety
> and security of the prison in violation of the Eighth Amendment on the part of
> defendants CCA CEO and president Damon Hininger, LECI Chief of Security
> [Chad] Rogers, LECI Warden Barry Goodrich, and LECI Deputy Warden
> Christopher Chestnut.  Following the assault, Thomas was treated by defendant
> LECI nurse Foster, who refused to admit him to the prison's infirmary or schedule
> X-rays.  Instead, Thomas was sent to the overcrowded segregation unit, where he
> spent seven nights on a mattress on the floor "no more than [two to three] feet at
> most from where a toilet and shower continually splashed on the floor . . .
> prisoners used the toilet . . . [and slept amidst] pubic hairs, dirt, dust, bugs, food
> particles, and other unsanitary substances."  He alleged that Rogers and several
> other LECI staff members ignored his requests for more hygenic
> accommodations, in violation of the Eighth Amendment.  In addition, Thomas
> alleged that defendant LECI health care administrator Linda Gillespie refused his
> requests for additional medical attention despite "two (2) black eyes . . . severe
> bruising . . . and . . . a severe laceration on the bridge of the nose," again in
> violation of the Eighth Amendment.  Last, Thomas alleged that shortly after the

---

[1]  Only the allegations pertaining to the conditions of Thomas's confinement in segregation,
following the first incident, have survived dismissal.

2

assault, defendant LECI captain William Potter pepper-sprayed him without
justification, constituting excessive force under the Eighth Amendment.

(R. 18-2; R. 51-12; *Thomas v. Hininger*, No. 15-3547 (6th Cir. Feb. 25, 2016) (unpublished slip
opinion), at 1-2.)

The Sixth Circuit found that, to state an Eighth Amendment claim for violations arising
from the conditions of confinement, "a prisoner must plead (1) that 'the failure to protect from
risk of harm was objectively sufficiently serious,' and that 'the official acted with deliberate
indifference to inmate health or safety.'"  (R. 18-2; R. 51-12; *Thomas*, slip op., at 4-5, quoting
*Taylor v. Larson*, No. 12-1347, 2012 WL 5861731, at *1 (6th Cir. Nov. 19, 2012) (per curiam)).
The Sixth Circuit pointed out that conditions similar to those that Thomas raised can pose a
sufficiently serious risk of harm for Eighth Amendment purposes.  *Thomas*, slip op., at 5, citing
cases.  The circuit court found that Thomas's allegations stated a facially plausible claim of
deliberate indifference, based on his conditions of confinement, but only against Rogers, whom
Thomas alleged he had notified.  *Id.* at 5-6.  The Sixth Circuit vacated the dismissal of the
deliberate indifference claim against Rogers, affirmed the dismissal of the remaining Section
1983 claims, and remanded to this court for further proceedings.  *Thomas*, slip op., at 7.


## III. MOTION FOR SUMMARY JUDGMENT

Rogers moves for summary judgment on two grounds.  He argues that summary
judgment should be granted because (1) Thomas failed to exhaust his administrative remedies,
and (2) Thomas cannot prove a claim of deliberate indifference.  (R. 44, PageID #: 425.)
Thomas opposes, arguing that he exhausted his administrative claims and also contends that the

Sixth Circuit's previous decision regarding the motion to dismiss constitutes res judicata that bars the motion for summary judgment. (R. 51-1, PageID #: 593-598; R. 59, PageID #: 768-769.)

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Quinn v. Eshem*, No. 16-3272, 2016 WL 9709498, at *2 (6th Cir. Dec. 20, 2016 ("Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"). Non-moving parties may not rest upon the mere allegations in their pleadings nor upon general allegations that issues of fact may exist. *See Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974). Moreover, a party asserting an affirmative defense bears the burden of proof at trial as to the affirmative defense, and thus bears that burden at the summary judgment stage as well. *See, e.g.*, *Wells Fargo Bank, N.A. v. Favino*, No. 1:10CV571, 2011 WL 1256847, at *4 (N.D. Ohio Mar. 31, 2011) (citing *Celotex*, 477 U.S. at 323-324). In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990).[2]

---

[2] Pro se plaintiff has filed exhibits in support of his opposition that have not been properly authenticated by an affidavit that both identifies and authenticates each document. *See Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000) (citing cases); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994); *Klein v. Manor Healthcare Corp.*, 19 F.3d 1433, 1994 WL 91786, at *6 (6th Cir. 1994) (TABLE, text in WESTLAW); *see generally* Fed. R. Civ. P. 56(c)(1)(A), (c)(4). Rogers, however, has not objected to the evidentiary materials filed by Thomas. *See generally*

IV.    EIGHTH AMENDMENT CLAIM

The sole claim in Thomas's amended complaint that partially survived dismissal is the Eighth Amendment claim, labeled "Conditions in the Cell."  (R. 22, ¶¶ 25-47.)  To prove a claim under 42 U.S.C. § 1983, the plaintiff must identify a right secured by the Constitution or laws of the United States, and the deprivation of that right by a person acting under color of state law. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).  An inmate may challenge the conditions of his confinement as an Eighth Amendment violation.  *Barajas v. Michigan Dep't of Corr.*, 21 F.3d 427, 1994 WL 88827, at *2 (6th Cir. 1994) (TABLE, text in WESTLAW) (citing *Estelle v. Gamble*, 429 U.S. 97, 101-108 (1976)).  Proving an Eighth Amendment claim requires that the plaintiff make a showing of deliberate indifference.  *Villegas v. Metropolitan Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (citing *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)); *Richmond v. Settles*, 450 Fed. Appx. 448, 454-455, 2011 WL 6005197, at *5-*6 (6th Cir. Dec. 2, 2011).  Deliberate indifference has an objective and subjective component.  *Id.*

The Sixth Circuit here stated that, for an Eighth Amendment violation arising from the conditions of confinement, the two elements are: "that 'the failure to protect from risk of harm was objectively sufficiently serious,' and that 'the official acted with deliberate indifference to inmate health or safety.'"  (R. 18-2; R. 51-12; *Thomas*, slip op., at 4-5, quoting *Taylor*, 2012 WL 5861731, at *1.)  The Sixth Circuit found that the original complaint had stated a facially

---

R. 56.  When a party does not object to the evidentiary materials submitted by the other party, any objections to the court's consideration of the materials are waived.  *Ford v. Securitas Sec. Servs. USA, Inc.*, No. 08-1262, 2009 WL 2031868, at *3-*4 (6th Cir. July 14, 2009) (citing *Wiley*, 20 F.3d at 226; *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 613 n. 3 (6th Cir. 2007), *cert. denied,* 555 U.S. 813 (2008)).

plausible claim of deliberate indifference based on conditions of confinement, although only as to Rogers.  (R. 18-2; R. 51-12; *Thomas*, slip op., at 5-6.)  The amended claim added some detail to the allegations, some of which already have been dismissed by this court.  *See generally* R. 33, PageID #: 386.  Among the allegations which survived dismissal are that other inmates were violent and screaming; that there was a residue of pepper spray on his body; that the segregation cell was cold; that there was no safe fire exit; that conditions in the cell were filthy and unsanitary; that he was required to sleep on the floor on an unclean and vermin-infested mattress; that he was not provided with soap, toothpaste, and toilet paper; that the food provided was inadequate; and that other inmates were smoking.  (R. 24, at 6-7, citing R. 22, ¶¶ 25-26, 29-30, 35, 40, 42-44, 47.)  As such, the court construes the conditions-of-confinement claim as alleging sub-claims about hygiene supplies, cell conditions, cell mates and meals.

Rogers contends that Thomas "cannot establish deliberate indifference to his conditions of confinement because the conditions are not objectively so grave that they violate contemporary standards of decency or deprive him of life's necessities."  (R. 44, PageID #: 432, 443-450.)  In addition, the defendant argues that there is no evidence that Rogers was subjectively aware of a substantial risk of harm to Thomas, and consciously disregarded that risk. *Id.* at 432, 450-452.

Thomas responds that the Sixth Circuit already decided that he stated an Eighth Amendment claim, and that res judicata should bar the motion for summary judgment on this matter.  (R. 51-1, PageID #: 598; R. 59, PageID #: 768-769.)  Thomas, however, overlooks the critical difference in the procedural posture between the Sixth Circuit's decision, which reviewed

6

a ruling on a motion to dismiss, and the motion for summary judgment now before this court. The Sixth Circuit examined whether the allegations in Thomas's complaint "state a claim to relief that is plausible on its face."  (R. 18-2; R. 51-12; *Thomas*, slip op., at 3, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  The court of appeals found that "conditions similar to those of which Thomas complained can pose a sufficiently serious risk of harm for Eighth Amendment purposes," thus Thomas had stated a facially plausible claim for relief.  *Id.* at 5.  The court also ruled that Thomas had "made out a facially plausible claim of deliberate indifference against Rogers but not against the other defendants."  *Id.* at 6.

Here, in opposing the defendant's motion for summary judgment, Thomas may not rest on the mere allegations of his amended complaint.  *Bryant*, 490 F.2d at 1275.  When considering a motion for summary judgment, allegations that may state a facially plausible claim for relief do not compel a finding against a properly supported motion for summary judgment.  Rather, Thomas must go beyond his pleadings and designate evidence of specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.  Thomas supplies two affidavits in support of his opposition to the motion for summary judgment (R. 51-3, PX B; R. 51-4, PX C), but as set forth below, the court finds that summary judgment should be granted to Rogers.

### A.  Objective Elements of Claim

The first element of the claim is whether the failure to protect the inmate from risk of harm was objectively sufficiently serious.  *Villegas*, 709 F.3d at 568; *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (citing *Harrison*, 539 F.3d at 518.)  The Sixth Circuit has further stated:

> But the objective component is not met by proof of such a substantial risk of
> serious harm alone.  The objective component further "requires a court to assess

7

> whether society considers the risk that the prisoner complains of to be so grave
> that it violates contemporary standards of decency"—that is, it "is not one that
> today's society chooses to tolerate."  *Helling v. McKinney*, 509 U.S. 25, 36, 113
> S.Ct. 2475, 125 L.Ed.2d 22 (1993).

*Villegas*, 709 F.3d at 568.  Complaints of routine discomforts will not state a claim.  *Barajas*,

1994 WL 88827, at *2 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  "Not every

unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual

punishment within the meaning of the Eighth Amendment."  *Ivey v. Wilson*, 832 F.2d 950, 954

(6th Cir. 1987) (per curiam); *see also Richmond*, 450 Fed. Appx. at 455, 2011 WL 6005197, at

*5.  Rogers contends that the surviving allegations fail to meet the objective component of an

Eighth Amendment claim.  (R. 44, PageID #: 443-450.)

### 1.  Hygiene Supplies

Thomas stated that no cleaning supplies, soap, toothbrush, toothpaste, or deodorant were

provided to him in segregation, in spite of institutional policy.  (R. 51-3, PageID #: 616-617,

618; R. 22, PageID #: 243, ¶¶ 36-39.)  Thomas also alleged that there was residue from pepper

spray all over his body, and his cell, and he was not given any opportunity or materials to

decontaminate himself.  (R. 22, PageID #: 241, 244, ¶¶ 26, 47.)

The defendant contends that plaintiff's alleged lack of hygiene products did not pose a

substantial threat of serious harm under the Eighth Amendment, and cites cases in support.  (R.

44, PageID #: 445.)  The court in *Jackson v. Coyn* ruled that an inmate had not stated an Eighth

Amendment claim related to an alleged lack of soap, showers, a towel, a clean cell, bed linens,

and eating utensils.  *Jackson v. Coyn*, No. 3:17CVP61, 2017 WL 2389400, at *3 (W.D. Ky. June

1, 2017).  The court noted that, generally, allegations about temporary inconveniences do not

demonstrate that conditions "fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency."  *Id.* (citing *Dellis v. Correctional Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001), and other cases).

Moreover, in *Richmond v. Settles*, the Sixth Circuit found no Eighth Amendment violation where the inmate "had no toilet paper, soap, toothpaste, toothbrush, running water, or the ability to shower for six days while on Behavioral Management," because "deprivation of a shower and other personal hygiene items for a 'brief span of time ..., i.e., only six days' is not actionable conduct."  *Richmond*, 450 Fed. Appx. at 455, 2011 WL 6005197, at *6 (quoting *Siller v. Dean*, 205 F.3d 1341, 2000 WL 145167, at *2 (6th Cir. 2000) (TABLE, text in WESTLAW)).

Thomas presents no caselaw or other authority which would establish that the alleged lack of hygiene products for a brief period of time posed a substantial threat of serious harm under the Eighth Amendment.  The motion for summary judgment should be granted, as to this sub-claim.

## 2.  Cell Conditions

Beyond general allegations about the conditions in his cell, Thomas complained specifically of sleeping on a dirty mattress, on the floor.  Thomas avers that he "was forced to sleep on the concrete floor with a two inch thick mattress and [he] was only given one blanket and one sheet," and he complained to prison officers, including Rogers, about not having a plastic protective "boat" to separate his mattress from the floor itself.  (R. 51-4, PageID #: 621; *see also* R. 22, PageID #: 242, ¶¶ 32-34.)

9

Thomas averred that he complained to officers (including Rogers) that toilet and shower water splashed on his bedding every time the toilet was flushed or the shower was used, and that the toilet water was filthy from normal usage.  (R. 51-4, PageID #: 621; *see also* R. 22, PageID #: 242, ¶¶ 32-33.)  He also complained to the officers that the cell was filthy, and he was forced to sleep on the floor amongst "pubic hairs, dirt, dust, bugs, food particles, and other unsanitary substances."  (R. 51-4, PageID #: 621-622.)

The defendant argues that plaintiff's complaints about his cell conditions and an allegedly dirty cell (in general) did not pose a substantial threat of serious harm under the Eighth Amendment, citing cases in support.  (R. 44, PageID #: 445-446.)  This court, in *Gabel v. Bunting*, stated that the Eighth Amendment "affords protection against conditions of confinement which constitute health threats, but not against those which cause mere discomfort or inconvenience."  *Gabel v. Bunting*, No. 3:11CV2404, 2012 WL 28405, at *4 (N.D. Ohio Jan. 5, 2012) (citing *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)).  The Supreme Court, in *Hudson*, asserted that "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9.  Moreover, the court in *Jackson* stated that "allegations about temporary inconveniences, e.g., being subjected to a flooded or otherwise dirty cell . . . do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency."  *Jackson*, 2017 WL 2389400, at *3 (citing *Dellis*, 257 F.3d at 511, and other cases).  Thomas presents no caselaw or other authority which would establish that the alleged conditions in his cell posed a substantial threat of serious harm under the Eighth Amendment.

Thomas does present case law which he argues supports a finding that sleeping on a floor mattress is unconstitutional.  (R. 59, PageID #: 771.)  But Thomas does not cite any binding Sixth Circuit authority and the case law he references is distinguishable.  For example, Thomas cites *Union County Inmates v. DiBuono*, in which the Third Circuit found that overcrowded conditions which resulted in inmates forced to sleep on a mattress on a floor adjacent to a toilet for "more than a few days" was unconstitutional.  713 F.3d 984, 994 (3d Cir. 1983).  However, the Third Circuit implicitly overruled *Union County* more recently, finding in *Hubbard v. Taylor* that sleeping on the floor for three to seven months was not an Eighth Amendment violation. *Hubbard v. Taylor*, 538 F.3d 229, 235-237 (3d Cir. 2008).  Thomas also cites *Lyons v. Powell*, in which the First Circuit found the use of floor mattresses for 27 days to be an Eighth Amendment violation.  *Lyons v. Powell*, 939 F.2d 28, 31 (1st Cir. 1988).  The court found the use of floor mattresses for "anything other than brief emergency circumstances" was a violation.  *Id.*  In *Moore v. Morgan*, the Eleventh Circuit found that, during plaintiff's incarceration in mid-1985 and mid-1986, the combination of no out-of-cell time and the overcrowded cell conditions in an institution which housed double its capacity violated the Eighth Amendment.  922 F.2d 1553, 1555 (11th Cir. 1991).  Although *Moore* did not provide a time frame in which inmates had to sleep of the floor, it is apparent that it lasted longer than a brief period of time.  As such, these cases do not require a finding that Thomas sleeping on a floor mattress for a brief period of seven days violates the Eighth Amendment.

Moreover, in *Daugherty v. Timmerman-Cooper*, the Southern District of Ohio found that the inmate's complaint of "triple celling him and forcing him to sleep on a mattress resting upon

11

the floor" was not an Eighth Amendment violation, particularly because "the conditions he complains of lasted only for a temporary ten day period."  *Daugherty v. Timmerman-Cooper*, No. 2:10-CV-01069, 2011 WL 3206844, at *4 (S.D. Ohio June 28, 2011), *adopted by*, 2011 WL 3207053 (S.D. Ohio July 27, 2011) (citing *Hubbard*, 538 F.3d at 234-236).  The court found that the inmate failed to demonstrate that the deprivations alleged were objectively, sufficiently serious to warrant relief.  *Id.*  The same finding is appropriate here, because Thomas has not alleged facts that rise to the level of an objectively sufficiently serious risk of harm.

The motion for summary judgment should be granted, as to this sub-claim.

### 3.  Issues with Cellmates

Thomas alleged that his cellmates were "violent and prone to lunacy; they were screaming and yelling at all hours of the day and night."  (R. 22, PageID #: 241.)  He also complained that his cellmates exhaled cigarette smoke into his face.  (R. 22, PageID #: 243.)  Rogers concedes that Thomas has a constitutional right to be free from violence, but points out that Thomas does not assert that he faced a substantial risk of serious harm from being housed in the cell with cellmates.  (R. 44, PageID #: 447, citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).)  Because Thomas has not demonstrated that he suffered any actual harm, summary judgment should be granted on this sub-claim.  *See, e.g.*, *Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998) (inmate did not suffer actual harm from cellmates).

Regarding Thomas's claim that his cellmates smoked homemade cigarettes in the cell, defendant responds that the institution was smoke-free and that, at most, Thomas has alleged

12

negligence, through imperfect policy enforcement, not an Eighth Amendment claim.  (R. 44, PageID # 448-49).  In addition, the Sixth Circuit has stated:

> In the context of an inmate's "secondhand smoke" claim, the plaintiff must establish that he has a serious medical need for a smoke-free environment, *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992), or that, regardless of health, the level of environmental tobacco smoke in the prison creates an unreasonable risk of serious damage to his future health.  *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

*Taylor v. Boot*, 58 Fed. Appx. 125, 126-127 (6th Cir. 2003) *cert. denied*, 540 U.S. 953 (2003).

Thomas has not presented facts to support a finding of either of these conditions.  Summary judgment should be granted on this sub-claim.

In addition, Thomas's administrative claim against Rogers did not include this cellmate sub-claim.  Therefore, he failed to properly exhaust it, requiring summary judgment in Rogers' favor, as explained *infra*.

### 4.  Meals

Thomas alleged that, although food was provided three times per day, the portions were meager, and "consisted of 3-4 bites in full."  (R. 22, PageID #: 243.)  Rogers contends that the food in segregation did not pose a substantial risk of serious harm that would rise to the level of an Eighth Amendment violation.  (R. 44, PageID #: 448.)

This court has held that allegations concerning limited food portions fail to state an Eighth Amendment claim.  *Gabel*, 2012 WL 28405, at *6; *see also Jackson*, 2017 WL 2389400, at *3.  The court found that "simply reducing serving sizes does not automatically result in a deprivation of the essential amounts of food required to meet Eighth Amendment standards. Plaintiff does not allege sufficient facts to allow this Court to draw the inference that this action

has deprived him of the basic requirement of food as opposed to merely causing him discomfort because he is not getting as much food as he is accustomed to being served."  *Gabel*, 2012 WL 28405, at *6.  In this case as well, Thomas has not demonstrated that he was deprived of the basic requirement of food during the single week he was in segregation.  Summary judgment should be granted on this sub-claim.  In addition, Thomas's administrative claim did not complain about the amount of food he was served in segregation.  Therefore, as explained *infra*, he failed to properly exhaust this sub-claim, requiring summary judgment in Rogers' favor.

Summary judgment should be granted to Rogers on the Eighth Amendment claim, because Thomas has failed to demonstrate that there is a genuine dispute of material fact regarding the objective element of his Section 1983 claim.

### B.  Subjective Elements of Claim

As to the second element of the Eighth Amendment claim, plaintiff must show that the defendant had "a sufficiently culpable state of mind."  *Villegas*, 709 F.3d at 569 (citing *Harrison*, 539 F.3d at 518).  "Under this subjective standard, a prison official cannot be found liable under the Eighth Amendment 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Mingus*, 591 F.3d at 480 (quoting *Farmer v. Brennan*, 511 U.S. 825, (1994)).  Direct evidence about Rogers' knowledge is not necessary, "but rather, the knowledge aspect of the subjective component can be inferred from the obviousness of the harm stemming from the risk."  *Villegas*, 709 F.3d at 569 (citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)).

14

As the Sixth Circuit noted, "[l]iability under Section 1983 cannot imposed solely on the basis of respondeat superior."  (R. 18-2; R. 51-12; *Thomas*, slip op., at 3, citing *Monell v. Department of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691-695 (1978)).  Liability for supervisory personnel will not be imputed unless Thomas can show "that the supervisor encouraged the specific incident of misconduct or in some way directly participated in it."  *Id.* (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *see also McQueen v. Beecher Community Schools*, 433 F.3d 460, 470 (6th Cir. 2006); *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003)).  The Sixth Circuit found that "Thomas simply fails to make any such allegation."  *Id.*

The amended complaint alleges that Rogers was fully aware of and knew the segregation cell conditions that Thomas complained about, and did not respond to Thomas's administrative complaints.  The amended complaint alleges that Rogers "acted, or failed to act, with deliberate indifference" to the conditions at issue.  (R. 22, at p. 2; *see also* ¶¶ 14, 17, 19-20.)

Rogers' motion for summary judgment contends that Thomas is unable to demonstrate that Rogers acted with the requisite subjective intent to violate plaintiff's Eighth Amendment rights.  (R. 44, PageID #: 450.)  Rogers asserts he was not made aware and had no personal knowledge of the alleged conditions in plaintiff's segregation cell from September 30, 2012, to October 7, 2012, nor was he made aware of the alleged conditions through the administrative grievance process.  *Id.* at 450-451, citing R. 44-2, Rogers decl, PageID #: 493, ¶¶ 24, 27.  Rogers states he has no recollection of Thomas, or of ever speaking with Thomas while he was

15

confined in segregation during the relevant time period.  *Id.* at 451, citing R. 44-2, Rogers decl, PageID #: 493, ¶¶ 21, 23.

Thomas's opposition offers no substantive retort to the merits of the motion for summary judgment, and relies on the meritless res judicata contention, dismissed above.  *See generally* R. 51-1, PageID #: 598-599.  Rogers' Reply asserts that summary judgment is appropriate, even if the court construes Thomas's affidavit as a factual argument against the motion, because plaintiff "essentially claims that Plaintiff made Defendant Rogers aware of his claims at an unspecified date and time."  (R. 56, PageID #: 705; see, e.g., R. 51-3, PageID #: 616-617, ¶¶ 6, 11.) Thomas's sur-reply disputes that characterization and states that he talked to Rogers while in segregation about the cell conditions, but Rogers failed to act.  (R. 59, PageID #770-71).

The conclusory statements by Thomas that "Rogers knew" of the condition are insufficient to carry his burden to provide specific evidence at the summary judgment stage.  A mere failure to act will not establish Rogers' liability.  *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004) (citing *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Thomas has failed to show that Rogers encouraged the specific incident(s) of misconduct or in some way directly participated in it.  *See, e.g., Shehee*, 199 F.3d at 300 (liability under § 1983 must be based on active unconstitutional behavior).

Thomas has failed to demonstrate that there is a genuine dispute of material fact regarding the subjective element of his Section 1983 claims; thus summary judgment should be granted to Rogers on the Eighth Amendment claim.

V. EXHAUSTION UNDER THE PLRA

Rogers argues, in the alternative, that Thomas's federal claims must be dismissed because he failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  (R. 44, PageID #: 434.)  The court agrees, in part, and further recommends dismissal of Thomas's claims as set forth below.

As an initial matter, the court notes that the motion to dismiss did not raise the issue of exhaustion.  But this court has held that in light of the Supreme Court's decision in *Jones v. Bock*,[3] which held that inmates are not required to plead or demonstrate exhaustion in their complaints, the "failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an issue that can only properly be decided in the posture of a motion for summary judgment." *Benavidez v. Stansberry*, No. 4:07CV03334, 2008 WL 4279559, at *8 (N.D. Ohio Sept. 12, 2008); *accord*, *Storm v. Bureau of Prisons*, No. 4:08CV1690, 2010 WL 4628666, at *7 (N.D. Ohio Oct. 14, 2010), *adopted by* 2010 WL 4628657 (N.D. Ohio Nov. 5, 2010); *see also Bruin v. Meko*, No. CIV.A. 14CV57, 2015 WL 1061578, at *3 (E.D. Ky. Mar. 10, 2015).

The relevant PLRA statutory language reads as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  *See generally Grinter v. Knight*, 532 F.3d 567, 577-578 (6th Cir. 2008); *Wright v. Morris*, 111 F.3d 414, 417 (6th Cir. 1997), *cert. denied*, 522 U.S. 906 (1997); *Thomas*

---

[3] *See Jones v. Bock*, 549 U.S. 199, 211-217 (2007) (abrogating *Knuckles El v. Toombs*, 215 F.3d 640 (6th Cir. 2000), and other cases requiring same).

17

*v. Novicky*, No. 13CV1469, 2014 WL 6896576, at *3 (N.D. Ohio Dec. 8, 2014).  The Supreme

Court has stated that several public policy goals underlie the exhaustion requirement:

> . . . Congress enacted § 1997e(a) to reduce the quantity and improve the quality of
> prisoner suits; to this purpose, Congress afforded corrections officials time and
> opportunity to address complaints internally before allowing the initiation of a
> federal case.  In some instances, corrective action taken in response to an inmate's
> grievance might improve prison administration and satisfy the inmate, thereby
> obviating the need for litigation.  In other instances, the internal review might
> "filter out some frivolous claims."  And for cases ultimately brought to court,
> adjudication could be facilitated by an administrative record that clarifies the
> contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524-525 (2002) (internal citations omitted).

Exhaustion is mandatory, thus prisoners must exhaust any available administrative

remedies before bringing a court action.  *Jones*, 549 U.S. at 211; *see also Ross v. Blake*, 136 S.

Ct. 1850, 1857 (2016) (PLRA establishes mandatory exhaustion regime, foreclosing judicial

discretion).  The Sixth Circuit has commented that the "PLRA's exhaustion requirement is a

strict one."  *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 226 (6th Cir. 2011).  "Proper exhaustion

demands compliance with an agency's deadlines and other critical procedural rules because no

adjudicative system can function effectively without imposing some orderly structure on the

course of its proceedings."  *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006); *see also Quinn*, 2016

WL 9709498, at *2 (affirming summary judgment because inmate skipped step two of grievance

procedure and did not properly exhaust the claim); *Richmond v. Settles*, 450 Fed. App'x 448, 457

(6th Cir. 2011) (quoting *Woodford*, 548 U.S. at 90) ("proper exhaustion of administrative

remedies ... means using all steps that the agency holds out, and doing so properly").  Moreover,

"[i]n order to properly exhaust administrative remedies, an inmate must comply with the

18

grievance procedures established by the particular prison in which he is incarcerated." *Quinn*, 2016 WL 9709498, at *2 (*citing Jones*, 549 U.S. at 218); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citing *Woodford*); *Kramer v. Wilkinson*, No. 07-4104, 2008 WL 5099716, at *3 (6th Cir. Dec. 3, 2008) (per curiam).  A plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy.  *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 221 n.2 (6th Cir. 2011) (citing *Brock v. Kenton Cty.*, 93 Fed. Appx. 793, 797-798 (6th Cir. 2004), and other cases).

Failure to exhaust is an affirmative defense under the PLRA.  *Jones*, 549 U.S. at 211-212, 216; *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017).  "When the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies."  *Mattox*, 851 F.3d at 590 (citing *Surles v. Andison*, 678 F.3d 452, 455-456 (6th Cir. 2012)); *see also Fraley v. Ohio Dep't of Corr.*, No. 16-4720, 2018 WL 2979902, at *2 (6th Cir. Mar. 22, 2018) (defendant must prove non-exhaustion by preponderance of the evidence); *Quinn*, 2016 WL 9709498, at *2 (citing *Risher*, 639 F.3d at 240) (burden of proof falls on defendants).  *See generally Wells Fargo*, 2011 WL 1256847, at *4 (citing *Celotex*, 477 U.S. at 323-324) (party asserting affirmative defense bears burden of proof); *Storm*, 2010 WL 4628666, at *7; *Benavidez*, 2008 WL 4279559, at *8.

The grievance procedure available to Ohio prison inmates is set forth at Ohio Admin. Code (OAC) § 5120-9-31.  *Marshall v. Ohio Dep't of Rehab. & Corr.*, No. 17-3569, 2018 WL 2539418, at *2 (6th Cir. May 23, 2018); *Mack v. DeWitt*, No. 01-4163, 2002 WL 847991, at *1

(6th Cir. Apr. 30, 2002); OAC § 5120-9-31(K).  "First, unless the grievance involves personal conduct of the warden or inspector of institutional services, an inmate must file, within fourteen days of the complained-of incident, an 'informal complaint' with 'the direct supervisor of the staff member, or department most directly responsible for the particular' incident."  *Quinn*, 2016 WL 9709498, at *2; OAC § 5120-9-31(K)(1).  "Informal complaints and grievances must contain specific information; dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved and the name or names of any witnesses."  OAC § 5120-9-31(K).  If the inmate is not satisfied with the resolution of his informal complaint, the second step is to file a "notification of grievance" with the inspector of institutional services.[4]  *Quinn*, 2016 WL 9709498, at *2; OAC § 5120-9-31(K)(2).  The inmate is entitled to a written response within 14 days, and if the inmate is dissatisfied with the disposition of the grievance, the third step is the inmate may appeal to the chief inspector of institutional services.  OAC § 5120-9-31(K)(3).  The chief inspector must notify the inmate of the resolution of his grievance in writing within thirty days.  *Id.*

The defendant asserts that all incoming inmates are provided with an Inmate Handbook, which contains an explanation of the institution's grievance procedures.  (R. 44, PageID #: 436; R. 44-1, Fisher decl., PageID #: 456, ¶ 7; *see generally* R. 44-1, PageID #: 466-470 (Inmate Handbook)).  At his orientation, Rogers acknowledged (through his signature) that he received a copy of the Inmate Handbook, and an explanation of the grievance system.  (R. 44, PageID #:

---

[4]  The Inmate Handbook provides that, if an inmate does not receive an answer to the ICR within 7 to 10 days, "then you should contact the institutional inspector." (R. 44-1, PageID #: 468, § V.)

436; R. 44-1, Fisher decl., PageID #: 456-457, ¶ 8; *see generally* R. 44-1, PageID #: 472 (signed orientation checklist)).

The Inmate Handbook contains a summary of the grievance procedures.  *See generally* R. 44-1, PageID #: 467-469.  The Handbook states that the first step is to informally attempt to resolve the complaint with staff working in the area.  *Id.* at 468.  If this does not resolve the issue, the inmate can file an informal complaint form.  *Id.*  The form should be sent to "the department or supervisor in charge of the area of your complaint."  *Id.*; *see also* OAC § 5120-9-31(K)(1) (inmate must file informal complaint with direct supervisor of staff member).  The Inmate Handbook does not contain an organizational chart of the institutional hierarchy.  *See generally* R. 44-1.  However, the Handbook instructs inmates that:  "Your unit staff or inspector can tell you who to send [the informal complaint] to."  *Id.* at 468.

Rogers contends that Thomas filed over one hundred Informal Complaint Resolution forms ("ICRs"), Notification of Grievance forms ("Grievances"), and appeals related to the circumstances giving rise to his lawsuit, but that only three such documents mentioned defendant Rogers by name.  (R. 44, PageID #: 438.)  Thomas does not challenge that characterization.  The defendant argues that none of these complaints were properly exhausted.  *Id.* at 438-442.

A.  October 12 ICR

The defendant first challenges an ICR dated October 12, 2012, that Thomas sent to Warden Goodrich and Inspector Fisher alleging violations of his Fifth and Eighth Amendment rights, dereliction of duty, medical negligence, inappropriate supervision, and failure to protect, related to his placement in segregation from September 30, 2012, to October 7, 2012.  (R. 44,

21

PageID #: 438; R. 51-8, PageID #: 648-650; *see also* R. 51-1, PageID #: 596 (stating Oct. 12

ICR sent directly to Goodrich); R. 59, PageID #: 758 (same).  *See generally* R. 22, Am.Compl.,

PageID #: 241-244, ¶¶ 21-22, 24-26, 28-30, 32-44, 47.)  The October 12th ICR includes multiple

claims, but references Rogers in connection with the Eighth Amendment claim concerning his

conditions of confinement.  Thomas claimed he was forced to lie directly on a filthy floor, and he

was not able to shower,

> . . . due to the fact that all of the staff I asked to retrieve my hygiene failed to do
> so for the entire time I sat in segregation which was seven (7) days.  The Officers
> that I asked are: [several named officers, and] ...  Mr. Rogers and I attempted to
> speak to Mr. Goodrich but was rudely interrupted by Mr. Rogers who stated that I
> was not giving him a chance to do his job.  When I spoke to Mr. Rogers after Mr.
> Goodrich left, he still failed to provide me with my writing materials and hygiene
> like I asked him for.  All of these Officers are and were aware of my condition
> while I was in the segregation unit but failed to assist me with anything I needed.

(R. 51-8, PageID #: 648-649.)

Thomas's October 12th ICR also named Rogers in the section where he alleged that all of

the named officers were "guilty of Dereliction of Duty for they have failed deliberately at

following up on my writing materials and hygiene request as I so desperately needed and are

allowed to have while being in the segregation unit."  (R. 51-8, PageID #: 649.)  Thomas alleged

that Rogers and the other officers "knew what I needed and refused to provide me with the items

necessary in order for me to maintain a normal living style and a humane state of mind during

the time I was in the segregation unit."  *Id.*

Defendant Rogers contends that Thomas did not comply with Step One of the prison's

grievance process, because Thomas sent the October 12th ICR to Warden Goodrich and

Inspector Fisher, rather than Assistant Warden Chestnut, who was Rogers' direct supervisor at

the time.  (R. 44, PageID #: 440; R. 44-1, Fisher decl., PageID #: 461, ¶ 28; *see also* OAC §

5120-9-31(K)(1)).  Thomas responds that he sent the ICRs "the department most responsible for

Rogers, the warden's office…."  (R. 51-1, PageID # 596)  A failure to properly exhaust cannot

be excused by an inmate's ignorance of the grievance policy.  *Napier*, 636 F.3d at 221 n.2.

Rogers, therefore, contends the claims in the October 12th ICR were not properly exhausted.

Defendant also states that the warden notified Thomas that his ICR was improperly

addressed, but Thomas failed to correct the procedural defect.  (R. 44-1, PageID # 461).  The

defendant, however, does not supporting evidence for the contention.  Thomas disputes that

characterization and asserts that he received no response from the warden.  (R. 51-1, PageID #

596-97).  Rogers argues Thomas next sent a Notification of Grievance dated October 24, 2012,

directly to the Chief Inspector,[5] skipping the second step, again in violation of the institution's

grievance process.  (R. 44, PageID #: 440; R. 44-1, Fisher decl., PageID #: 461, ¶ 28.  *See*

*generally* R. 51-7, PageID #: 644.)  Thomas disputes that assertion and asserts that he submitted

the step two notification of grievance properly, but did not receive a response.  The court need

not determine whether there is a material factual dispute concerning the October 24th Grievance,

because it cannot serve to exhaust a claim against Rogers.

### B.  October 24 Grievance

The defendant challenges Thomas's October 24th Grievance, which was based on an ICR

Thomas filed on October 3, 2012, with Warden Goodrich and Inspector Fisher, "pertaining to

Cruel and Unusual Punishment, Inappropriate Supervision ..., Medical Negligence, and Violation

---

[5]  The second step of the process is to file a "notification of grievance" with the Inspector of
Institutional Services, not the Chief Inspector.  OAC § 5120-9-31(K)(2).

of my Fifth Amendment Due Process."  ((R. 44, PageID #: 440; R. 51-7, PageID #: 644.)  The

October 3rd ICR, however, does not mention defendant Rogers.  Thus, it cannot serve to exhaust

a claim against Rogers.  *Lee v. Willey*, 789 F.3d 673, 680 (6th Cir. 2015) (citing *Vandiver v.*

*Corr. Med. Servs., Inc.*, 326 Fed. Appx. 885, 888 (6th Cir. 2009); *Sullivan v. Kasajaru*, 316 Fed.

Appx. 469, 470 (6th Cir. 2009)) (grievance cannot exhaust claim against defendant where

defendant is not named in Step One of grievance procedure).  *See generally* R. 51-7, PageID #:

641-642; R. 56, PageID #: 698.

The defendant also argues that a Grievance form is to be used to address "only one

incident or concern."  (R. 44, PageID #: 440.)  The defendant's interpretation of the October 24th

Grievance is that it "taken as a whole, complains of Inspector Fisher's failure to provide Plaintiff

with grievance forms."  *Id.*  Thus, it is defendant's contention that, "although Plaintiff mentioned

Defendant Rogers by name in the ICR dated October 12, 2012, he abandoned his complaints

against Defendant Rogers by filing a grievance against Inspector Fisher for failure to provide

him with grievance forms in the Notification of Grievance filed on October 24, 2012."  *Id.* at

440-441.  The court does not agree that the primary focus of the October 24th Grievance is

Fisher's failure to provide grievance forms.  The October 24th Grievance form recites the

plaintiff's underlying complaints regarding his conditions of confinement and Rogers'

involvement, complains that he filed an ICR on October 3rd, and that he "never heard anything

back."  (R. 51-7, PageID #: 644.)  Only the final portion of the form concerns the failure of

Fisher to supply him with grievance forms.  *Id.*

24

Nevertheless, the court finds that the October 3rd ICR, which was the basis of the October 24th Grievance, cannot be considered part of an exhausted claim against defendant Rogers because it does not mention Rogers.  Because the defendant was not named at every step, the claims underlying the October 3rd ICR and October 24th Grievance were not properly exhausted.  *Lee*, 789 F.3d at 680.

### C.  October 26 Grievance

The defendant also asserts that Thomas improperly filed another Notification of Grievance on October 26, 2012, with the Chief Inspector, bypassing the second step.  (R. 44, PageID #: 441; R. 51-8, PageID #: 652.)  Thomas disputes that he skipped the second step, and asserts that he sent the October 26th Grievance to the Chief Inspector only after Inspector Fischer refused to respond to it.  (R. 51-1, PageID # 597).  On that October 26th Grievance form, Thomas noted that he filed an October 12th ICR pertaining to Fifth Amendment due process concerns, Eighth Amendment cruel and unusual punishment, medical negligence, inappropriate supervision, and a failure to protect claim.  (R. 51-8, PageID #: 652.)  Thomas's October 26th Grievance indicated:

> Mr. Fisher you did not date my [ICR], or [cite] the appropriate Policy, procedure or regulation in response and additionally Mr. Rogers never did address all my issues with me, but as a matter of fact he was fully aware of the fact that I had no writing materials, [or] hygiene, and that I was sleeping on a filthy floor under his supervision.  He did not retrieve any of my property as I so desperately needed.  He completely ignored me as if I was no more than an animal in a cage.  This man is not providing prisoners within the segregation unit the proper necessities as needed.
>
> Mr. Fisher, what is the actual outcome of my complaint that I had filed with you concerning all of these problems and violations I had to endure while I was forced to be in segregation.

25

> I have attached my informal complaint resolution form dated on 10-12-12 and
> another informal complaint resolution form dated on 10-[19]-12.[6]

(R. 51-8, PageID #: 652.)  The defendant contends that, despite reference to the October 12th

ICR against Rogers, the October 26th Grievance was directed at Inspector Fisher's behavior, not

that of the defendant, Rogers.  (R. 44, PageID #: 441.)

 The Chief Inspector received the grievance, and issued a decision denying the grievance

on December 27, 2012.  (R. 51-8, PageID #: 653.)  The Chief Inspector stated that Thomas

appeared to be addressing Inspector Fisher, requesting a response to an informal complaint that

he had filed.  *Id.*  The Chief Inspector indicated that, under the proper procedure, Thomas should

have filed his grievance with the inspector of institutional services.  *Id.  See generally* OAC §

5120-9-31(K)(2) (second step is to file "notification of grievance" with inspector of institutional

services).  The Chief Inspector also found that the grievance against Inspector Fisher failed to

show that Fisher was "personally and knowingly involved in a violation of law, rule, or policy

and approved it or did nothing to prevent it."  (R. 51-8, PageID #: 653).

 Construing the facts in favor of Thomas, the court finds that the October 12th ICR serves

as a basis for the October 26th Grievance.  The parties present conflicting affidavits and

arguments regarding whether the October 12th ICR complied with step one and two of the

grievance procedure.  However, neither party has identified any documents or other evidence

that clearly demonstrates the absence of a material fact.  The defendant has the burden of proof

to demonstrate failure to exhaust.  It is evident that defendant has not carried his burden.  In

---

[6] Thomas's opposition included the October 19 ICR (*id.* at 651), which was directed to Fisher
and requested a response to his October 12th ICR.

addition, the court finds there is an issue of fact regarding whether the prison officials' actions or inaction at step one and two, and the Chief Inspector's December 27th response to Thomas's administrative claims waived the alleged procedural defects and failure-to-exhaust defense.

"When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits," the court should consider the claims, and not invoke failure to exhaust. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). *See also Lee*, 789 F.3d at 680 (citing *Reed-Bey*); *Maxwell v. Correctional Med. Servs., Inc.*, 538 Fed. App'x 682, 687-688 (6th Cir. 2013) (citing *Reed-Bey*); *Shavers v. Bergh*, No. 09-2475, 2011 WL 12473743, at *2 (6th Cir. July 15, 2011) (reversing summary judgment on basis of exhaustion); *Garcia v. Correctional Corp. of Am.*, No. 4:09CV1928, 2010 WL 2253616, at *4 (N.D. Ohio June 2, 2010). When prison officials decline to enforce their own procedural rules, the state has had a chance to provide a remedy for the inmate. *Maxwell*, 538 Fed. Appx at 688. The state's decision to review the claim supports the court's doing likewise, "even when a procedural default might otherwise have resolved the claim." *Id.* The undersigned, therefore, does not recommend dismissal of Thomas's claim, predicated upon the alleged failure to exhaust his October 12th ICR and October 26th Grievance. But that does not end the analysis.

To the extent Thomas's amended complaint and briefings seek to describe his cell conditions as extreme as those cited by the Sixth Circuit when remanding this case (R. 51-12), he did not exhaust such claims in the ICR. The October 12th ICR stated there was no "plastic boat," he had only one state blanket, he slept on the floor near where a toilet and shower are used, he claimed the floor was "extremely disgusting with body hairs and pubic hairs from 3

27

separate prisoners...along with dirt that's on the floor" and cold air blowing under the cell door; and, he was not able to shower for the entire seven days he was in segregation.  (R. 51-8, PageID #: 648-649.)  In addition, this ICR alleged he told Rogers about not having writing materials and hygiene materials.  *Id.* at 649.  The October 12th ICR, however, does not complain about vermin, a bed bug infested mattress, or that he was exposed to human waste or the other extreme conditions alleged in the amended complaint.  *See generally* R. 22, PageID #: 241-243.  Further, Thomas's administrative claim did not complain about the amount of food he was served in segregation, nor did the claim raise any issues concerning exits and his cellmates.  *See generally* R. 51-8, PageID #: 648-649; *compare* R. 22, PageID #: 241, 243, ¶¶ 25, 40, 43.

The October 26th Grievance stated, in pertinent part, Rogers was "was fully aware of the fact that I had no writing materials, [or] hygiene, and that I was sleeping on a filthy floor under his supervision. ….  This man is not providing prisoners within the segregation unit the proper necessities as needed."  (R. 51-8, PageID #: 652.)  Even if Thomas exhausted his October 12th claim, it simply alleged dirty/filthy cell conditions and that he had to sleep on the floor near where a toilet and shower were located.  Nowhere does Thomas allege feces or urination on the floor or his mattress, or that the smell or conditions in the cell were so foul to rise to the level of the cases cited by the Sixth Circuit.  *See* R. 51-8, PageID #: 648, 652.  Although Thomas's filings in this court seek to raise new sub-claims under the Eighth Amendment conditions of confinement claim, his amended complaint and sur-reply do not cure his initial failure to raise and properly exhaust such claims.

A review of the above administrative claims demonstrates that Thomas did not allege or properly exhaust claims—such as having to sleep in feces and urine, complaints about cellmates, the lack of a fire exit or adequate food.  Thomas has failed to properly exhaust these sub-claims of the Eighth Amendment claim, by failing to follow the procedure set forth in the Inmate Handbook and the Ohio Administrative Code, and failing to give notice of his allegedly extreme conditions of confinement.  By extension, Thomas did not attribute any such conditions to Defendant Rogers's actions, requiring dismissal of those sub-claims, for failure to exhaust.

## VI.  CONCLUSION

The undersigned recommends that Rogers' motion for summary judgment (R. 44) be GRANTED.  Thomas has failed to demonstrate that there is a genuine dispute of material fact regarding the objective and subjective elements of his Section 1983 claim.  Thus, summary judgment should be granted to Rogers on the sole remaining Eighth Amendment claim.

In addition, Thomas's filings in this court sought to add new sub-claims under the Eighth Amendment conditions of confinement claim.  The undersigned recommends those sub-claims be dismissed for failure to exhaust.  Thomas has not demonstrated a genuine issue of material fact regarding his failure to satisfy the procedural requirements of his Section 1983 claim, thus summary judgment for defendant is proper.  *See, e.g.*, *Benavidez*, 2008 WL 4279559, at *8.

Date:  August 8, 2018                                    /s/ David A. Ruiz
                                                        David A. Ruiz
                                                        United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the district court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).